IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
(CLARKSBURG)

**MELISSA WILSON**
**111 Mayer Avenue**
**Terra Alta, WV 26764**

      **Plaintiff,**

v.

Civil Action No.:   1:15-cv-18 (Keeley)

Electronically Filed February 2, 2015

**U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**
**320 First Street, N.W.**
**Washington, DC 20534**
      **Serve On:**
            **William J. Ihlenfeld, II, Esquire**
            **U.S. Attorney**
            **Federal Center**
            **320 West Pike Street, Suite 300**
            **Clarksburg, WV 26301-2710**

And

**WARDEN TERRY O'BRIEN**
**USP HAZELTON**
**1640 Sky View Drive**
**Bruceton Mills, WV 26525**
      **Also Serve On:**
            **William J. Ihlenfeld, II, Esquire**
            **U.S. Attorney**
            **Federal Center**
            **320 West Pike Street, Suite 300**
            **Clarksburg, WV 26301-2710**

And

**ASSOCIATE WARDEN WILLIAM ODOM**
**USP HAZELTON**
**1640 Sky View Drive**
**Bruceton Mills, WV 26525**
      **Also Serve On:**
             **William J. Ihlenfeld, II, Esquire**
             **U.S. Attorney**
             **Federal Center**
             **320 West Pike Street, Suite 300**
             **Clarksburg, WV 26301-2710**
**And**

**OFFICER RICHARD THOMAS**
**USP HAZELTON**
**1640 Sky View Drive**
**Bruceton Mills, WV 26525**
      **Also Serve On:**
             **William J. Ihlenfeld, II, Esquire**
             **U.S. Attorney**
             **Federal Center**
             **320 West Pike Street, Suite 300**
             **Clarksburg, WV 26301-2710**

      **Defendants.**

## COMPLAINT

**NOW COMES**, the Plaintiff, Melissa A. Wilson (hereinafter "Wilson"), by and through her attorneys, Kimberly A. Fitzwater and Amanda D. Mattingly, and file this Complaint against the Defendants, U.S. Department of Justice, Federal Bureau of Prisons (hereinafter "BOP"), Warden Terry O'Brien (hereinafter "Warden O'Brien"), Associate Warden William Odom (hereinafter "Associate Warden Odom") and Officer Richard Thomas (hereinafter "Thomas"), and aver and state as follows:

## COMPLIANCE WITH FEDERAL TORT CLAIMS ACT

1.     Pursuant to the Federal Tort Claims Act, on or about January 31, 2014 a claim for Damage was filed with the Federal Bureau of Prisons on behalf of the Plaintiff, Melissa A. Wilson. (See Claim Form, attached hereto and identified as Plaintiff's Exhibit A).

2

2.      On or about March 25, 2014, undersigned received a letter from the Federal Bureau of Prisons in response to filing said claim which indicated the Bureau had six (6) months from the date of receipt of the claim to review, consider and adjudicate the claim. (See Letter, attached hereto and identified as Plaintiff's Exhibit B).

3.      On or about January 13, 2015 undersigned followed up on the status of the claim via telephone and was informed by Diane Lee with the Bureau of Prisons that the claim filed on behalf of the Plaintiff, Melissa Wilson could not be located, therefore the claim could be resubmitted or a Complaint could be filed in the U.S. District Court.

4.      Due to the length of delay since the original claim was filed, the Plaintiff, Melissa A. Wilson, has elected to file this Complaint rather than resubmit the claim to the Bureau of Prisons.

## FACTUAL ALLEGATIONS COMMON TO EACH COUNT

5.      The Plaintiff, Melissa A. Wilson, is an adult resident of Preston County, residing therein at: 111 Mayer Avenue, Terra Alta, West Virginia.

6.      The Defendant, U.S. Department of Justice, Federal Bureau of Prisons, is and was at all times material and relevant herein, an agency organized and existing under the laws of United States of America, operating a prison facility in the State of West Virginia, identified as U.S. Penitentiary Hazelton, located at: 1640 Sky View Drive, Bruceton Mills, West Virginia.

7.      Defendant, Warden Terry O'Brien, was at all times herein an agent, servant or employee of Defendant, U.S. Department of Justice, Federal Bureau of Prisons, at its facility identified as U.S. Penitentiary Hazelton, located at: 1640 Sky View Drive, Bruceton Mills, West Virginia.

8.      Defendant, Associate Warden William Odom, was at all times herein an agent, servant or employee of Defendant, U.S. Department of Justice, Federal Bureau of Prisons, at its

facility identified as U.S. Penitentiary Hazelton, located at: 1640 Sky View Drive, Bruceton Mills, West Virginia.

9.      Defendant, Officer Richard Thomas, was at all times herein an agent, servant or employee of Defendant, U.S. Department of Justice, Federal Bureau of Prisons, at its facility identified as U.S. Penitentiary Hazelton, located at: 1640 Sky View Drive, Bruceton Mills, West Virginia.

10.     At all times herein, Plaintiff Melissa Wilson was a Correctional Officer employed by the Defendant, U.S. Department of Justice, Federal Bureau of Prisons, at its facility identified as U.S. Penitentiary Hazelton, located at: 1640 Sky View Drive, Bruceton Mills, West Virginia, and also served as the president of the Employee's Club.

11.     Several officers had volunteered their personal time to have a car wash to raise funds to assist a fellow officer with terminal cancer.   The money raised at the car wash was given directly to said officer.   No funds were taken from the Employee's Club Account.

12.     Shortly after the personal fund raising event, Thomas approached the Wilson and demanded money from the Employee's Club to help support his family.

13.     Thomas believed that the Employee's Club should be supporting him and his family.

14.     Thomas began a year-long harassment campaign against Wilson, which included regular telephone calls, e-mails and verbal confrontations.

15.     On three different (3) occasions, Thomas sought a peace order against Wilson and other officers, all of which were denied, with the judge commenting that Thomas cannot control himself.

16.      Thomas forced audits of the employee's club books on at least four occasions.

17.     Upon information and belief Thomas told the inmates that he would do whatever it

4

took to take Wilson out.

      18.    Wilson has been a prison guard at USP Hazelton for approximately nine (9) years, and received two (2) awards in 2008. The Women in Federal Law Enforcement (WIFLE) organization named Wilson as the 2008 recipient of the Julie Y. Cross Award, which is the highest award a female federal officer can receive. (See article, attached hereto and identified as Plaintiff's Exhibit C). Wilson was also named the October 2008 Officer of the Month by the National Law Enforcement Officers Memorial Fund (NLEOMF). (See article, attached hereto and identified as Plaintiff's Exhibit D).

      19.    When Warden Terry O'Brien, was transferred to Hazelton from a prison in Virginia, he brought several inmates with him to the facility.

      20.    On multiple occasions, when the Wilson would take away privileges of the inmates for discipline such as iPods and television, the Warden O'Brien would return the privileges to his inmates, whereby undermining Wilson's authority over the inmates.

      21.    In August 2012, Thomas verbally attacked Wilson in front of the inmates, whereby compromising the safety of Wilson.

      22.    In August 2012, Wilson requested a threat assessment be performed by the executive staff, based upon telephone calls, e-mails and, in particular the most recent verbal confrontation by Thomas against Wilson that had taken place in the presence of inmates as evidenced by the attached Memorandum written by Melissa Wilson dated August 7, 2012, and identified as Plaintiff's Exhibit E.

      23.    The formal threat assessment process began August 13, 2012 and took approximately eight (8) months for the Defendants to complete. (See Memorandum dated August 20, 2012, attached hereto and identified as Plaintiff's Exhibit F).

      24.    Wilson was told Thomas would not be permitted to work inside the prison walls

with inmates until the threat assessment was completed and requested to be notified if and when Thomas was permitted to go back inside with the inmates.

25.     During the passage of the eight (8) months, Wilson requested a copy of the threat assessment on a weekly basis.

26.     Wilson had filed a discrimination complaint with the Bureau of Prisons.

27.     On February 27, 2013, Plaintiff questioned Associate Warden Odom why Thomas was permitted back inside with the inmates, before the threat assessment had been completed. Associate Warden Odom advised Wilson that there was no reason why Thomas could not return inside with the inmates and that she and Thomas would just have to be nice to each other. Wilson informed Associate Warden Odom that she was fearful to go back inside with the inmates since Thomas had been working inside with the inmates and potentially could have instigated an inmate attack on her.

28.     On March 1, 2013, Wilson saw Thomas leaving his shift inside with the inmates.

29.     On March 1, 2013, Wilson met with Unit Manager LeMaster, expressing her concern about Thomas working back inside with the inmates, and requesting a copy of the threat assessment. Unit Manager LeMaster advised that he knew nothing about it and that he would check in to it.

30.     On March 1, 2013, Wilson contacted her new Unit Manager Smith about her safety concerns and requesting a copy of the threat assessment. Smith advised that she would check in to it.

31.     On March 1, 2013, Dr. Thomas Fanning came to Wilson to see what the problem was. Wilson advised Dr. Thomas Fanning that Thomas had been working inside with the inmates for three shifts, that Wilson had not been told that Thomas would be back inside with the inmates, and that she did not have a copy of the threat assessment.

6

32.     On March 1, 2013, Dr. Thomas Fanning advised Wilson that they had not worked out all of the "bugs and kinks" and that she should just "hang in there," and that he would check on the threat assessment with Warden O'Brien, but that Warden O'Brien was not working that day.

33.     On March 1, 2013, Wilson spoke with Associate Warden Ratledge, and told him of her concerns for her safety.

34.     On March 4, 2013, Associate Warden Odom approached Wilson and told her that "it's done and over with." He pulled a typed one-page document from his jacket pocket and handed it to Wilson, claiming that the document was her copy of the threat assessment; in fact, it was a document purportedly typed by William Odom and signed only by William Odom (hereinafter referred to as "William's bogus threat assessment"). Associate Warden Odom then told Wilson that "tomorrow you need to go to your office and do your job and I do not want to hear another word about it do you understand me?" (See Memorandum dated March 1, 2013 attached hereto and identified as Plaintiff's Exhibit G).

35.     On March 4, 2013, Wilson spoke with Warden O'Brien and expressed her concerns for her safety and requested a copy of the threat assessment. Warden O'Brien advised that his resolution would be to keep Thomas and Wilson separated for their employment. Wilson advised Warden O'Brien that her concern was Thomas running his mouth to the inmates and his ability to provoke an inmate attack on Wilson.

36.     On March 4, 2013, Warden O'Brien's response to Wilson's safety concerns about a potential inmate attack provoked by Thomas, was that she should "get out of the institution."

37.     On March 4, 2013, at the conclusion of her conversation with Warden O'Brien, Wilson ended her shift and went home early, using six hours of sick leave.

38.     On March 5, 2013, a follow up to Wilson's request for a threat assessment was conducted which resulted in a four-page Memorandum, dated March 5, 2013, that concluded that

Thomas and Wilson should not be forced to work together.  The threat assessment alluded to "additional issues" that would be "reviewed" and that "further recommendations will come forth." (See Memorandum dated March 5, 2013 attached hereto and identified as Plaintiff's Exhibit H).

39.     Upon information and belief, the "additional issues" were never addressed and no further recommendations were made.

40.     On March 5, 2013, Wilson sent an e-mail to Union Executive Vice President Popielarcheck, Unit Manager David LeMaster, Human Resources Denise Powell, Warden Terry O'Brien, Dr. Thomas Fanning and Associate Warden William Odom, requesting a copy of the threat assessment. (See email dated March 5, 2013 attached hereto and identified as Plaintiff's Exhibit I).

41.     On March 5, 2013, the following day after begin presented with the William's bogus threat assessment, Associate Warden Odom insisted that Wilson resume her position inside the gates with the inmates, and in fact got up in Wilson's face and shook his finger instructing that she "will go back in."

42.     On March 5, 2013, Wilson again formally requested a copy of the threat assessment and was called into a meeting with Denise Powell from Human Resources, Dr. Thomas Fanning, Officer Smith - Vice President of the Union, and Smith the Unit Manager.   During this meeting, Wilson again expressed her concerns of Thomas and his working inside with the inmates and potential to instigate an inmate attack on Wilson.

43.     During the March 5, 2013 meeting, Dr. Thomas Fanning asked Wilson if she was afraid of Thomas to which Wilson replied that she was not afraid of Thomas but was afraid of Thomas running his mouth and instigating an inmate attack on her.

44.     No issues were resolved during the March 5, 2013 meeting.

45.     On March 7, 2013, Wilson sent an e-mail to Warden O'Brien requesting a copy of

8

the threat assessment. (See email dated March 7, 2013 attached hereto and identified as Plaintiff's Exhibit J).

46.     On March 7, 2013, Dr. Thomas Fanning advised Wilson that the threat assessment has "been sent for a higher review to assist in determining an appropriate course of action.   As such the report cannot be released at this time." (See email and response dated March 7-8, 2013 attached hereto and identified as Plaintiff's Exhibit K).

47.     On or about April 9, 2013, Warden O'Brien told Wilson that if she dropped her Equal Employment Opportunity (EEO) complaint that he would provide her with a copy of the threat assessment.

48.     On or about April 9, 2013, Wilson was presented with a document that forced her to withdrawal her allegation of discrimination based upon her sex as a female, and Wilson signed the document at the urging of Warden O'Brien with a promise of receiving a copy of the threat assessment.

49.     On May 14, 2013, inmate Shelton Harris (hereinafter "Inmate Harris") physically attacked Wilson, punching her eleven (11) times in the temple, face, neck and shoulder as detailed in a Memorandum dated July 29, 2013, which is attached hereto and identified as Plaintiff's Exhibit L.

50.     Wilson's injuries were photographed at her home the day after the attack by Special Investigative Supervisor Technician A. Gettinger and Special Investigative Supervisor Lieutenant M. Serrano. Copies of said photographs are attached hereto and collectively identified as Plaintiff's Exhibit M.

51.     During the attack, Wilson never went to the ground and was able to drag inmate Harris into the hallway.

52.     Upon information and belief, inmate Harris was "paid to take her out" and was

supposed to kill Wilson.

53.     Prior to the attack, inmate Harris had been moved into a cell with inmate Mobley who worked directly with Thomas in the laundry department.

54.     As a result of injuries sustained in the May 14, 2014 attack, Wilson sustained a black eye, laceration under her right eye, a concussion, swelling to the right side of her face, and contusion to her neck, shoulders and back.  Wilson was treated and released at Monongalia General Hospital in Morgantown, and underwent six (6) weeks of physical therapy.

55.     At one point after the May 14, 2013 attack, an e-mail was sent that Wilson had only taken "two rib shots" and basically that she deserved the attack.

56.     On June 17, 2013, when Wilson returned to work after the attack, she was presented with a three-page Threat Assessment, dated April 30, 2013, that concluded that "there is no significant threat posed to the safety and wellbeing of Mrs. Wilson by inmates in the general population at USP Hazelton, WV". (See Memorandum dated April 30, 2013 attached hereto and identified as Plaintiff's Exhibit N).

57.     On Wilson's first day back to work (June 17, 2013) she was given no special instructions and permitted to return to her regular duties within the prison walls among the inmates for a full shift.

58.     While in route to her office, Wilson passed by a number of inmates who were completely silent and starred as she walked through. This struck Wilson as odd and made her fearful because the inmates were never silent. Wilson overheard one inmate say "I thought they said she wouldn't be back".

59.     The next day, June 18, 2013, Wilson again was given no special instructions and was permitted to return to her office inside the prison walls. On this day, however she was only permitted to work for a short time when she was pulled from her office by Warden O'Brien.

10

60.    Two (2) days after being permitted to work inside the prison walls, Warden O'Brien informed Wilson that new information had been obtained and her safety was at risk, therefore she would not be permitted to return to her duties behind the prison walls.

61.    Wilson was informed by Shawn Burchett, Special Investigative Agent, that inmate Harris stated he was "paid off" to "take Wilson out". The attack Wilson suffered was supposed to be a stabbing rather than an assault; however inmate Harris was unable to gain access to his weapon.

62.    As a result of the attack, Wilson continues to suffer migraines, has trouble with memory loss, has trouble sleeping and suffers from nightmares regularly.

63.    The Plaintiff reasserts and incorporated all factual allegations contained in Paragraphs 1-62 in each and every count of this Complaint.

## COUNT ONE - DELIBERATE INTENTION BY DEFENDANTS BOP, WARDEN O'BRIEN and ASSOCIATE WARDEN ODOM

64.    Plaintiff hereby reiterates and incorporates each and every allegation contained in the preceding paragraphs as if fully set forth herein.

65.    Defendants acted with deliberate intention in failing to timely complete the threat assessment, and allowing the Plaintiff in and among the general population of prisons despite the physical threat to her person.

66.    Defendants knew or should have known that placing the Plaintiff among general population could or would result in serious bodily injury or death to the Plaintiff.

67.    Defendants in other ways acted with deliberate intention.

68.    As a direct and proximate result of the deliberate intentions of Defendants BOP, Warden O'Brien and Associate Warden Odom, the Plaintiff incurred significant, substantial permanent bodily injury; that Plaintiff asserts that all of this loss, damage and injury was the direct

11

result of the   deliberate intention of Defendants with no want of due care on Plaintiff's part
contributing thereto.

## COUNT TWO - DISCRIMINATION RACE BY DEFENDANT BOP, WARDEN O'BRIEN and ASSOCIATE WARDEN ODOM

69.     Plaintiff hereby reiterates and incorporates each and every allegation contained in
the preceding paragraphs as if fully set forth herein.

70.     While the Plaintiff is Caucasian, Plaintiff is married to an African American.

71.     Defendants knew of Plaintiff's marriage to an African American, and Defendants
discriminated against the Plaintiff because of same.

72.     Plaintiff was treated unfavorably in her job assignment, as well as the handling of
the threats made by Defendant Thomas, and the handling of the threat assessment based upon race.

73.     Defendants in other ways discriminated against the Plaintiff under the conditions of
her employment based upon race.

## COUNT THREE - DISCRIMINATION SEX BY DEFENDANT BOP, WARDEN O'BRIEN and ASSOCIATE WARDEN ODOM

74.     Plaintiff hereby reiterates and incorporates each and every allegation contained in
the preceding paragraphs as if fully set forth herein.

75.     Plaintiff was treated unfavorably in her job assignment, as well as the handling of
the threats made by Defendant Thomas, and the handling of the threat assessment based upon her
sex as a female.

76.     Defendants in other ways discriminated against the Plaintiff under the conditions of
her employment based upon sex.

## COUNT FOUR- PUNATIVE DAMAGES

77.     Plaintiff hereby reiterates and incorporates each and every allegation contained in
the preceding paragraphs as if fully set forth herein.

12

78.     Actions of the Defendants were willful, wanton, malicious and/or reckless and/or done with reckless disregard for the civil rights of the Plaintiff, and/or were done with actual malice and, as such, punitive damages should be assessed.

79.     The acts of the Defendants have caused the Plaintiff to sustain emotional distress, mental anguish, inconvenience, annoyance, humiliation, embarrassment, aggravation, and other general damages.

80.     The acts and omissions of the Defendants have caused the Plaintiffs to incur substantial costs, expenses and attorney's fees.

81.     As a direct and proximate result of the Defendants willful, wanton, malicious actions, the Plaintiff is entitled to recover economic damages and non-economic damages, including increased attorney's fees and expenses.   The acts and omissions of the Defendants were so outrageous that the Plaintiff is entitled to recover punitive damages from the Defendants in order to punish the Defendants and to deter it and other companies from engaging in similar conduct in the future.

**WHEREFORE**, the Plaintiff, Melissa Wilson, respectfully prays that judgment be entered against the Defendants, for compensatory damages, general damages, and punitive damages, attorney's fees, costs, damages for annoyance and inconvenience, net economic loss and other general damages

**PLAINTIFF DEMANDS A TRIAL BY JURY**

MELISSA A. WILSON
By Counsel


Respectfully submitted,


Kimberly A. Fitzwater
WV State Bar 6510
P.O. Box 364
Oakland, Maryland 21550
(301) 334-3390
kim@fitzwaterlawyer.com
*Counsel for Plaintiff*


Amanda Mattingly
WV State Bar 11678
120 N. 2nd Street
Oakland, Maryland 21550
 (301) 533-0047
amanda@turneyandmattingly.com
*Counsel for Plaintiff*


14

## VERIFICATION

**STATE OF MARYLAND**
**COUNTY OF GARRETT, to-wit:**

Personally appeared before the undersigned authority, in and for the County and State aforesaid, Melissa A. Wilson, who being by me duly sworn, deposes and says that the facts and allegations contained in the COMPLAINT are true, except insofar as they are therein stated to be upon information and belief, and, insofar as they are therein stated to be upon information and belief, he believes them to be true.

Melissa A. Wilson, Plaintiff

Taken, subscribed and sworn to before me this __23rd__ day of __January__,

2015.

Teresa Ann Weeks
NOTARY PUBLIC
Garrett County, Maryland
My Commission Expires 11/3/2015

Notary Public

My Commission expires:

15