IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MELISSA WILSON,

       Plaintiff,

v.                  //   CIVIL ACTION NO. 1:15CV18
                                (Judge Keeley)

UNITED STATES DEPARTMENT OF JUSTICE,
UNITED STATES OF AMERICA,

       Defendants.

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO
VACATE ORDER OF SUBSTITUTION, GRANTING PLAINTIFF'S MOTION FOR
EXTENSION OF TIME TO RESPOND, AND DENYING AS MOOT PLAINTIFF'S
<u>MOTION TO STAY RULING ON MOTION TO DISMISS [DKT. NO. 13]</u>**

Pending before the Court is the motion to vacate the order of substitution (dkt. no. 13) filed by the plaintiff, Melissa Wilson ("Wilson"). For the reasons that follow, the Court **DENIES** the motion.

## I. BACKGROUND

This case arises as a consequence of alleged actions by several employees of the United States Department of Justice, Bureau of Prisons ("BOP"), all of whom worked at the United States Penitentiary Hazelton ("USP Hazelton"). Wilson originally sued those employees by name and now challenges the government's certification that those employees acted within the scope of their employment and that the United States should be substituted in their place.

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO VACATE ORDER OF SUBSTITUTION, GRANTING PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO RESPOND, AND DENYING AS MOOT PLAINTIFF'S MOTION TO STAY RULING ON MOTION TO DISMISS [DKT. NO. 13]**

## A.    Factual Background

Wilson has worked as a correctional officer at USP Hazelton for approximately nine (9) years; during that time, she has also served as the President of the Employees' Club. At some point, another correctional officer at the prison, Richard Thomas ("Thomas"), "demanded" that Wilson give him money from the Employees' Club "to help support his family." (Dkt. No.1 at 4). Wilson declined, a decision that allegedly resulted in a "year-long harassment campaign" against her by Thomas.  The harassment included confrontational communications, efforts by Wilson to obtain a peace order against Thomas, and audits of the Employees' Club books. Id.

Apparently, Thomas was not the only employee at USP Hazelton with whom Wilson had difficulties. She has alleged that the prison warden, Terry O'Brien ("O'Brien"), undermined her authority over the inmates by returning to them privileges she had taken away. She also asserts that the associate warden, William Odom ("Odom"), permitted Thomas to keep working inside the prison, even after Wilson had requested a threat assessment against him in August 2012.

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO
VACATE ORDER OF SUBSTITUTION, GRANTING PLAINTIFF'S MOTION FOR
EXTENSION OF TIME TO RESPOND, AND DENYING AS MOOT PLAINTIFF'S
MOTION TO STAY RULING ON MOTION TO DISMISS [DKT. NO. 13]**

After requesting the threat assessment, Wilson regularly checked on its status, but claims she was told only that it remained pending. During this time, she also filed an Equal Employment Opportunity ("EEO") sex discrimination complaint with the BOP, and expressed to her supervisors and the human resources department her concern that Thomas might "instigate [] an inmate attack on her." (Dkt. No. 1 at 6).

On March 4, 2013, Odom provided Wilson with a written memorandum she has characterized as a "bogus threat assessment." (Dkt. No. 1 at 7). O'Brien then advised Wilson that he would keep her separated from Thomas during working hours. Unsatisfied, Wilson reiterated her fear of an inmate attack incited by Thomas. She then received an addendum to the threat assessment, which alluded to "additional issues" that would be addressed in the future. Believing she had yet to see the real threat assessment, Wilson made several requests for it with her various supervisors. On April 9, 2013, O'Brien allegedly informed Wilson that, if she dropped her discrimination complaint, he would provide her with the real threat assessment. Wilson agreed.

On May 14, 2013, Wilson, who still had not received the real

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO VACATE ORDER OF SUBSTITUTION, GRANTING PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO RESPOND, AND DENYING AS MOOT PLAINTIFF'S MOTION TO STAY RULING ON MOTION TO DISMISS [DKT. NO. 13]**

threat assessment from O'Brien, was attacked by an inmate, Shelton Harris ("Harris"), who punched her eleven (11) times around the head and neck. As a result of the attack, Wilson suffered "a black eye, laceration under her right eye, a concussion, swelling to the right side of her face, and contusion to her neck, shoulders and back." (Dkt. No. 1 at 10).

After she recovered from these injuries, Wilson returned to work on June 17, 2013, and finally received the real threat assessment, which ironically concluded that "there is no significant threat posed to the safety and wellbeing of Mrs. Wilson by inmates in the general population at USP Hazelton." (Dkt. No.1 at 10). The following day, she was allowed to return to her office within the prison walls. Later on that day, however, O'Brien pulled her from her office. Id.

Two days later, on June 20, 2013, O'Brien informed Wilson that she would not be allowed to return to work inside the prison walls because of newly obtained information that her safety was at risk. (Dkt. No. 1 at 11). At some point, Wilson also learned from a special investigative agent, Shawn Burchett ("SIA Burchett"), that her attacker had been "paid off" to "take Wilson out," and that the

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO
VACATE ORDER OF SUBSTITUTION, GRANTING PLAINTIFF'S MOTION FOR
EXTENSION OF TIME TO RESPOND, AND DENYING AS MOOT PLAINTIFF'S
MOTION TO STAY RULING ON MOTION TO DISMISS [DKT. NO. 13]**

assault was meant to be a stabbing. (Dkt. No. 1 at 11).

**B.    Procedural Background**

On January 31, 2014, Wilson filed a claim with the BOP seeking
damages of $500,000 as a consequence of the May 14, 2013, attack.
On March 25, 2014, the BOP responded that, "[u]nder the provisions
of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2675, we have
six months from the date of receipt of your claim in this office,
to review, consider, and adjudicate your claim." (Dkt. No. 1-2 at
2). The BOP allegedly then lost Wilson's claim, and ultimately
directed her either to resubmit it or to file a claim in federal
district court.

Accordingly, on February 2, 2015, Wilson filed a complaint in
this Court, naming as defendants the BOP, O'Brien, Odom, and
Thomas. In the "short and plain statement of the grounds for the
court's jurisdiction," required by Fed. R. Civ. P. 8(a)(1), Wilson
explained that her complaint was filed pursuant to the FTCA. She
asserted the following counts:

- Count One - Deliberate intention against the BOP,
  O'Brien, and Odom;

- Count Two - Racial discrimination against the BOP,
  O'Brien, and Odom;

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO VACATE ORDER OF SUBSTITUTION, GRANTING PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO RESPOND, AND DENYING AS MOOT PLAINTIFF'S MOTION TO STAY RULING ON MOTION TO DISMISS [DKT. NO. 13]**

- Count Three - Sex discrimination against the BOP, O'Brien, and Odom; and

- Count Four - Punitive damages against all the defendants.

Notably, Wilson failed to name Thomas in any of the substantive accounts of the complaint; he is, however, presumptively included in Count Four, a stand alone claim for punitive damages against "all defendants."

On March 5, 2015, the United States filed a "Notice of Substitution" and a "Certification of Scope of Employment," pursuant to 28 U.S.C. § 2679(d)(1). Based on the language of the statute, the Court immediately entered an order dismissing the individual defendants and substituting the United States as defendant in their place.[1] Subsequently, on March 9, 2015, the United States moved to dismiss Wilson's complaint for three reasons: 1) the Court lacks subject matter jurisdiction, as Wilson's claims are preempted by federal law; 2) Wilson has failed to exhaust her administrative remedies;  and 3) Wilson has failed to state a claim upon which relief may be granted (dkt. no. 9). At Wilson's request (dkt. no. 11), the Court extended her response

_____

[1]The Department of Justice remained a party defendant because the government's notice did not seek its dismissal.

6

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO
VACATE ORDER OF SUBSTITUTION, GRANTING PLAINTIFF'S MOTION FOR
EXTENSION OF TIME TO RESPOND, AND DENYING AS MOOT PLAINTIFF'S
MOTION TO STAY RULING ON MOTION TO DISMISS [DKT. NO. 13]**

time until April 2, 2015 (dkt. no. 12).

On that deadline, rather than responding to the motion to dismiss, Wilson moved (1) to vacate the order of substitution, (2) to extend further her time to respond to the government's motion to dismiss, and (3) to stay any ruling on the motion to dismiss until after the Court ruled on the motion to vacate substitution (dkt. no. 13). Wilson argued that she should be permitted to contest the government's certification of scope of employment. In its response to Wilson's motion to vacate, the United States contended that the order of substitution had been correctly entered based on the certification of scope of employment, and that Wilson should not be permitted to contest the certification. (dkt. no. 17). Wilson's motion to vacate is fully briefed and ripe for review.

## II. APPLICABLE LAW

Under the Federal Employees Liability Reform and Tort Compensation Act of 1988, also known as the Westfall Act, federal employees are absolutely immune from tort claims "arising out of acts they undertake in the course of their official duties." Osborne v. Haley, 549 U.S. 225, 229 (2007); see 28 U.S.C. § 2679(b)(1). The Act prescribes the process by which the United

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO VACATE ORDER OF SUBSTITUTION, GRANTING PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO RESPOND, AND DENYING AS MOOT PLAINTIFF'S MOTION TO STAY RULING ON MOTION TO DISMISS [DKT. NO. 13]**

States may substitute itself in place of certain federal employees:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1). Thus, once the Attorney General ("AG") files a certification that the subject employees were acting within the scope of their office or employment, the United States is substituted in place of those parties, and the case moves forward pursuant to the FTCA. See Osborne, 549 U.S. at 230; Gutierrez de Martinez v. Lamagno, 515 U.S. 417 (1995) (hereinafter Lamagno I).

Scope of employment certifications are not absolute, however. A plaintiff may challenge the AG's scope of employment certification, which is then subject to review by the district court.[2] See Osborne, 549 U.S. at 230 (citing Lamagno I, 515 U.S. at

---

[2]In Lamagno I, "the Supreme Court held that a certificate of scope of employment is conclusive for purposes of removal only-not substitution. Accordingly, a district court is permitted to review the certificate relative to the matter of substitution." Vogrin v. U.S., 1998 WL 193108, at *1 (4th Cir. 1998). No remand question is present in the instant matter, only whether substitution is proper.

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO
VACATE ORDER OF SUBSTITUTION, GRANTING PLAINTIFF'S MOTION FOR
EXTENSION OF TIME TO RESPOND, AND DENYING AS MOOT PLAINTIFF'S
MOTION TO STAY RULING ON MOTION TO DISMISS [DKT. NO. 13]**

420, 436-37). Absent a challenge, the AG's certification is

conclusive. See <u>Gutierrez de Martinez v. Drug Enforcement Admin.</u>,

111 F.3d 1148, 1155 (4th Cir. 1997), <u>cert.</u> <u>denied</u>, 522 U.S. 931

(1997) (hereinafter <u>Lamagno II</u>).[3]

The Fourth Circuit has clearly laid out the process by which

a district court should review scope of employment certifications:

> In short, the scope-of-employment certification is prima
> facie evidence that the defendant federal employee acted
> within the scope of his employment, thereby placing the
> burden on the plaintiff to prove otherwise. If the
> plaintiff does not come forward with any evidence, the
> certification is conclusive. Moreover, the plaintiff's
> submission must be specific evidence or the forecast of
> specific evidence that contradicts the Attorney General's

---

[3]A brief explanation of the procedural history of <u>Lamagno</u> is
in order. The case was originally styled as <u>de Martinez v. Lamagno</u>.
There, the Fourth Circuit held that the plaintiff could not
challenge the certification and substitution of the government. On
review, the Supreme Court of the United States held that scope of
employment certifications are subject to judicial review, and
reversed and remanded the case to the Fourth Circuit, which in turn
remanded it to the district court for further proceedings. Along
the way, the style of the case changed to <u>Gutierrez de Martinez v.
Drug Enforcement Agency</u>.

The district court applied the ruling of the Supreme Court,
reviewed the certification, and concluded that the plaintiff had
failed to establish an improper certification. That decision was
appealed to the Fourth Circuit, which affirmed. For ease of
citation here, the Supreme Court's opinion is denominated <u>Lamagno
I</u> and the Fourth Circuit's final opinion as <u>Lamagno II</u>.  <u>Lamagno II</u>
remains the Fourth Circuit's seminal case on the issue of scope of
employment certification and review.

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO VACATE ORDER OF SUBSTITUTION, GRANTING PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO RESPOND, AND DENYING AS MOOT PLAINTIFF'S MOTION TO STAY RULING ON MOTION TO DISMISS [DKT. NO. 13]**

> certification decision, not mere conclusory allegations and speculation. If the plaintiff's evidence is sufficient to carry the burden of proof, the defendant federal employee or the Government may come forward with evidence in support of the certification. At this point, the district court may permit (and limit) any needed discovery. Thereafter, the district court must determine whether there are any genuine issues of fact material to the scope-of-employment decision, and, if so, it may conduct an evidentiary hearing to resolve these factual issues. Once any factual issues are resolved, the district court should weigh the evidence on each side to determine whether the certification should stand.

Id.; see also Borneman v. United States, 213 F. 3d 819, 827 (4th Cir. 2000) (applying the Lamagno II framework).

When confronted with the question of scope of employment certification, district courts should limit discovery or evidentiary hearings to those instances in which "the certification, the pleadings, the affidavits, and any supporting documentary evidence [] reveal an issue of material fact." Lamagno II, 111 F.3d at 1155. The sufficiency of the plaintiff's evidence is a decision solely for the court. Id. Only where a district court finds that genuine questions of material fact exist regarding the scope of employment issue should the certified employee be "burdened with discovery and an evidentiary hearing." Id.

Notably, when reviewing scope of employment certifications,

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO
VACATE ORDER OF SUBSTITUTION, GRANTING PLAINTIFF'S MOTION FOR
EXTENSION OF TIME TO RESPOND, AND DENYING AS MOOT PLAINTIFF'S
MOTION TO STAY RULING ON MOTION TO DISMISS [DKT. NO. 13]**

the district court should "apply the law of the state where the
conduct occurred." <u>Id.</u> at 1156 (citing <u>Jamison v. Wiley</u>, 14 F.3d
222, 227 n.2 (4th Cir. 1994)). Thus, the Court must apply West
Virginia law, as the incidents alleged in Wilson's complaint
occurred at U.S.P. Hazelton, which is located in Bruceton Mills,
West Virginia.

Under West Virginia law, "[a]n act specifically or impliedly
directed by the master, or any conduct which is an ordinary and
natural incident or result of that act, is within the scope of the
employment." <u>West Virginia Regional Jail and Correctional Facility
Authority v. A.B.</u>, 766 S.E.2d 751, 768 (W.Va. 2014)(citations
omitted). Further, employees act within the scope of their
employment when the subject conduct is "1) of the kind he is
employed to perform; 2) occurs within the authorized time and space
limits; 3) it is actuated, at least in part, by a purpose to serve
the master, and; 4) if force is used, the use of force is not
unexpectable by the master." <u>Id.</u> at 769 (quoting <u>Restatement
(Second) of Agency § 228</u>).

Conduct that "is different in kind from that authorized, far
beyond the authorized time or space limits, or too little actuated

11

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO
VACATE ORDER OF SUBSTITUTION, GRANTING PLAINTIFF'S MOTION FOR
EXTENSION OF TIME TO RESPOND, AND DENYING AS MOOT PLAINTIFF'S
MOTION TO STAY RULING ON MOTION TO DISMISS [DKT. NO. 13]**

by a purpose to serve the master" is outside the scope of employment. Id. Finally, conduct may be within the scope of employment "even if the specific conduct is unauthorized or contrary to express orders, so long as the employee is acting within his general authority and for the benefit of the employer." Id. (citing Travis v. Alcon Laboratories, Inc., 504 S.E. 2d 419, 431 (W.Va. 1998)).

### III. DISCUSSION

In her motion to vacate substitution (dkt. no. 13), Wilson objects to the AG's certification and the subsequent substitution of the United States for the named defendants. The Court must now review that substitution in accord with the framework provided by the Fourth Circuit in Lamagno II.

The AG's certification provides prima facie evidence that O'Brien, Odom, and Thomas were acting within the scope of their employment. Lamagno II, 111 F.3d at 1155. The burden then shifts to Wilson "'to prove by a preponderance of the evidence that the [employees] were not acting within the scope of their employment.'" Borneman, 213 F. 3d at 827 (quoting Maron v. United States, 126 F.3d 317, 323 (4th Cir. 1997)). Wilson, therefore, is required to

12

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO
VACATE ORDER OF SUBSTITUTION, GRANTING PLAINTIFF'S MOTION FOR
EXTENSION OF TIME TO RESPOND, AND DENYING AS MOOT PLAINTIFF'S
MOTION TO STAY RULING ON MOTION TO DISMISS [DKT. NO. 13]**

come forward with "specific evidence or the forecast of specific evidence" contradicting the certification. Lamagno II, 111 F.3d at 1155. If Wilson meets her burden, the AG may present evidence to support her own contention that the acts were indeed within the scope of employment. Borneman, 213 F. 3d at 827[4] (citing Maron, 126 F.3d at 323; Lamagno II, 111 F.3d at 1155).

The Court looks at the actions of each of the certified employees to determine whether Wilson has established that each was acting outside the scope of his employment under West Virginia law.

**A.    Associate Warden Odom**

Wilson has failed to meet her burden of establishing that Odom acted beyond the scope of his employment. The complete breadth of Wilson's allegations against Odom include: (1) he knew of her conflict with Thomas and that she was fearful of working with him among the inmates, yet he required her to do so; and (2) he gave her a "bogus threat assessment" in an effort to quash the situation and get Wilson to return to work. See Dkt. No. 1 at ¶¶ 27, 34, and

---

[4]It should be noted that, although Borneman is helpful on the issues of applying the Lamagno II framework, it is less instructive on the scope of employment inquiry because the court there was applying North Carolina scope of employment law.

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO
VACATE ORDER OF SUBSTITUTION, GRANTING PLAINTIFF'S MOTION FOR
EXTENSION OF TIME TO RESPOND, AND DENYING AS MOOT PLAINTIFF'S
MOTION TO STAY RULING ON MOTION TO DISMISS [DKT. NO. 13]**

41. Wilson's memorandum in support of her motion to vacate states that "[t]he attack was permitted by Terry O'Brien and William Odom to occur because the defendants [sic] failure to properly assess and resolve the dispute between the plaintiff and fellow correctional officer Richard Thomas." (Dkt. No. 14 at 1). It goes on to reiterate paragraph 34 of her complaint regarding the "bogus threat assessment." Id. at 2.

There is no evidence disputing the AG's certification that Odom was acting within the scope of his employment at all times relevant to the complaint. Indeed, the only conclusion one can glean from the evidence is that Odom's actions in directing Wilson to work, even if unwise or negligent, were "1) the kind he is employed to perform; 2) occur[ed] within the authorized time and space limits; [and] 3) [was] actuated, at least in part, by a purpose to serve [his employer]." W. Va. Regional Jail, 766 S.E.2d at 768.

Nor is there any evidence that Odom gave Wilson a "bogus threat assessment." Indeed, what Wilson has submitted to the Court amounts to nothing more than a memorandum from Odom regarding recommendations culled from the August 20, 2012, threat assessment

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO
VACATE ORDER OF SUBSTITUTION, GRANTING PLAINTIFF'S MOTION FOR
EXTENSION OF TIME TO RESPOND, AND DENYING AS MOOT PLAINTIFF'S
MOTION TO STAY RULING ON MOTION TO DISMISS [DKT. NO. 13]**

— something clearly within the scope of Odom's duties.

Further, Wilson has failed to provide evidence that Odom acted in any way designed to advance his own independent purposes, or that benefitted him rather than his employer. Although Wilson may have a colorable argument that Odom acted negligently, she has neither pleaded such, nor indicated how that would remove his actions from the scope of his employment.

Accordingly, Wilson has failed to meet her burden of establishing, by a preponderance of the evidence, an improper certification that Odom was acting within the scope of his employment. Consequently, the Court **DENIES** Wilson's motion to vacate as it pertains to Associate Warden Odom.

**B.    Warden O'Brien**

Wilson also has failed to meet her burden of establishing that O'Brien acted beyond the scope of his employment. Wilson's claims against O'Brien largely center around four allegations: (1) O'Brien knew that Wilson was fearful Thomas could provoke an inmate to attack her, did nothing, and ultimately responded to her concerns by stating that Wilson "should get out of that institution"; (2) on multiple occasions, O'Brien undermined her authority by returning

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO VACATE ORDER OF SUBSTITUTION, GRANTING PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO RESPOND, AND DENYING AS MOOT PLAINTIFF'S MOTION TO STAY RULING ON MOTION TO DISMISS [DKT. NO. 13]**

to inmates items that she had taken away from them; (3) O'Brien coerced Wilson into dropping her EEO complaint for sex discrimination in exchange for a copy of the threat assessment; and (4) two days after Wilson returned to work, O'Brien removed her from work inside the prison walls after receiving information that her safety was at risk.

Wilson asserts that "[t]he attack was permitted by Terry O'Brien and William Odom to occur because the defendants [sic] failure to properly assess and resolve the dispute between the plaintiff and fellow correctional officer Richard Thomas." (Dkt. No. 14 at 1). She then reiterates the principal allegations from paragraphs 2, 36, 47, and 48 of her complaint regarding O'Brien. Id. at 2.

Once again, Wilson has provided no evidence establishing – or even suggesting — how O'Brien acted beyond the scope of his employment. When taken as true, O'Brien's alleged statement to Wilson, that she should leave the prison if she was to afraid to work, can be characterized as no more than insensitive. Nonetheless, the warden of a federal penitentiary certainly acts within the scope of his employment when suggesting that an officer

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO
VACATE ORDER OF SUBSTITUTION, GRANTING PLAINTIFF'S MOTION FOR
EXTENSION OF TIME TO RESPOND, AND DENYING AS MOOT PLAINTIFF'S
MOTION TO STAY RULING ON MOTION TO DISMISS [DKT. NO. 13]**

who truly feels unsafe might want to consider other employment. Notably, Wilson has failed to provide any evidence of how O'Brien's actions served his own, independent purposes or benefitted him rather than his employer.

That same conclusion holds true for O'Brien's other alleged actions as alleged by Wilson. Certainly, she cannot argue that O'Brien acted beyond the scope of his employment when he removed her from working inside the prison walls after receiving information that she was in danger. To the contrary, O'Brien's employment required him to protect Wilson once he perceived that she was the subject of a credible threat.

It may be true that returning items to inmates after Wilson had taken them away undercut Wilson's authority with those inmates. Nevertheless, this is something that clearly was within O'Brien's discretion and scope of employment.

Finally, regarding whether O'Brien was aware that Wilson was afraid to work with Thomas, or that she was concerned about an impending inmate attack at the behest of Thomas, Wilson has failed to show how O'Brien's decisions fall outside the scope of his employment. Certainly, a warden has the authority to weigh threats

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO
VACATE ORDER OF SUBSTITUTION, GRANTING PLAINTIFF'S MOTION FOR
EXTENSION OF TIME TO RESPOND, AND DENYING AS MOOT PLAINTIFF'S
MOTION TO STAY RULING ON MOTION TO DISMISS [DKT. NO. 13]**

and concerns, and to make decisions regarding personnel and work assignments. Wilson has never argued that O'Brien's decision making was negligent, nor has she provided any evidence that he acted in any way that served his own, independent purposes, or benefitted him rather than his employer.

Accordingly, Wilson has failed to meet her burden of establishing, by a preponderance of the evidence, an improper certification that O'Brien was acting within the scope of his employment. The Court therefore **DENIES** Wilson's motion to vacate as it pertains to Warden O'Brien.

**C.   Officer Thomas**

Wilson claims that Officer Thomas clearly acted in a manner outside the scope of his employment with the BOP when he instigated an inmate attack intended to injure Wilson. See e.g. W. Va. Regional Jail, 766 S.E.2d at 768 (finding that sexual assault by correction officer was "so divergent from the scope of his duties they were made expressly felonious if committed by him in that context"); Porter v. South Penn Oil Co., 24 S.E.2d 330, 333 (W.Va. 1943) (employee assault was not in course of employment because the "acts in committing this assault grew out of his personal

grievance, real or assumed, with which, by no reasonable rule of law, can the [employer] be connected").

Arguably, under <u>Lamagno</u> II, Wilson has come forward with sufficient evidence to allow limited discovery. For example, the deposition of SIA Burchett, who allegedly informed her that inmate Harris told him he had been "paid off" to "take Wilson out." Or perhaps the deposition of Harris himself. Nevertheless, the Court declines to exercise its discretion to order limited discovery because, upon review, Wilson's complaint renders the substitution question moot as it pertains to Thomas.

Wilson's complaint specifically asserts Counts One, Two, and Three against "Defendant BOP, Warden O'Brien and Associate Warden Odom." (Dkt. No. 1 at 11-12). Count Four asserts a claim for punitive damages, but does not specifically name any of the defendants, instead, simply referencing "the Defendants." (Dkt. No. 1 at 12-13). No factual allegations are asserted against Thomas in any of Wilson's substantive claims.

As to Count Four, in particular, even assuming Wilson intended to include Thomas among "the Defendants," he cannot be held liable in a stand-alone claim for punitive damages. "It is widely held

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO
VACATE ORDER OF SUBSTITUTION, GRANTING PLAINTIFF'S MOTION FOR
EXTENSION OF TIME TO RESPOND, AND DENYING AS MOOT PLAINTIFF'S
MOTION TO STAY RULING ON MOTION TO DISMISS [DKT. NO. 13]**

that there is no cause  action for punitive damages alone." Wells
v. Smith, 297 S.E.2d 872, 876, 878 (W.Va. 1982) (citing 22
Am.Jur.2d, Damages § 241 (1965); Annot., 17 A.L.R.2d 527 (1951)),
overruled by Garnes v. Fleming Landfill, Inc., 413 S.E. 2d 897
(W.Va. 1991); Lyon v. Grasselli Chemical Co., 146 S.E. 57, 58
(W.Va. 1928) ("[T]he right to recover punitive damages in any case
is not the cause of action itself, but a mere incident thereto.").

The Supreme Court of Appeals of West Virginia has explicitly
held that, without an award of compensatory damages, a plaintiff
may not recover punitive damages. See Garnes, 297 S.E.2d at 899.
("Therefore, we overrule Syllabus Point 3 of Wells to the extent
that it stands for the proposition that a jury may return an award
for punitive damages without finding any compensatory damages.")

Other courts have recognized Garnes's prohibition. See e.g.
Proctor v. 7-Eleven, Inc., 180 Fed.Appx. 453, 459 (4th Cir. 2006)
("Under West Virginia law, the [plaintiffs] may not recover
punitive damages unless they also recover compensatory damages.");
Vanderbilt Mortg. and Finance, Inc. v. Cole, 740 S.E.2d 562, 569
(W.Va. 2013) (" . . . Garnes, [] requires that awards of punitive
damages be conditioned on an award of actual damages . . . .").

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO
VACATE ORDER OF SUBSTITUTION, GRANTING PLAINTIFF'S MOTION FOR
EXTENSION OF TIME TO RESPOND, AND DENYING AS MOOT PLAINTIFF'S
MOTION TO STAY RULING ON MOTION TO DISMISS [DKT. NO. 13]**

Here, Wilson failed to name Thomas in any of her substantive claims for damages; thus, he cannot be held liable for compensatory damages under any of those claims. Under <u>Garnes</u>, it follows, that Wilson cannot recover an award of punitive damages from Thomas. Under these circumstances, vacating the order of substitution as it pertains to Thomas would be futile. Accordingly, the Court **DENIES** Wilson's motion to vacate the AG's certificate of substitution as it pertains to Thomas.

**D.     Wilson's Motions for an Extension of Time to Respond to the Government's Motion to Dismiss and to Stay Ruling on the Motion to Dismiss Pending the Court's Ruling on the Motion to Vacate**

Wilson also has moved to extend the deadline to file her response to the government's motion to dismiss (dkt. no. 9), and for the Court to stay its ruling on that motion pending its decision on the instant motion to vacate. Given the Court's denial of her motion to vacate, Wilson ought to be given an opportunity to respond to the government's motion to dismiss. Accordingly, she may have fourteen (14) days from the date of the entry of this Order to respond to the motion to dismiss, and the government shall have seven (7) days from the date of her response in which to file their reply.

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO VACATE ORDER OF SUBSTITUTION, GRANTING PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO RESPOND, AND DENYING AS MOOT PLAINTIFF'S MOTION TO STAY RULING ON MOTION TO DISMISS [DKT. NO. 13]**

---

### IV. CONCLUSION

The AG presented prima facie evidence that the certified employee defendants were acting within the scope of their employment. Furthermore, although Wilson properly objected to the certification, she has failed to meet her burden of proof to refute that certification. Finally, no genuine issue of fact material to the scope of employment decision is present, and there is no basis to order limited discovery or to conduct an evidentiary hearing. Although the Court declines to vacate the order of substitution, it grants Wilson an opportunity to respond to the government's motion to dismiss.

In sum, based on the foregoing, the Court:

1.  **DENIES** Wilson's motion to vacate order of substitution (dkt. no. 13);

2.  **GRANTS** her motion to extend the time in which to respond to the government's motion to dismiss (dkt. no. 9) and **ORDERS** that she file any such response no later than fourteen (14) days from the date of the entry of this order;

3.  **ORDERS** that the government file any reply no more than

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO
VACATE ORDER OF SUBSTITUTION, GRANTING PLAINTIFF'S MOTION FOR
EXTENSION OF TIME TO RESPOND, AND DENYING AS MOOT PLAINTIFF'S
MOTION TO STAY RULING ON MOTION TO DISMISS [DKT. NO. 13]**

seven (7) days from the date Wilson's response is filed;
and

4.   **DENIES as MOOT** her motion to stay ruling on motion to
     dismiss pending ruling on motion to vacate order of
     substitution (dkt. no. 9).

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order
to counsel of record.

DATED: February 29, 2016.

<u>/s/ Irene M. Keeley</u>
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE